UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| MICHELLE LEON, | ) | No. ED CV 06-1001-PLA |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) | |
| MICHAEL J. ASTRUE,[1] | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## I.

## PROCEEDINGS

Plaintiff filed this action on September 22, 2006, seeking review of the Commissioner's denial of her application for Supplemental Security Income. The parties filed Consents to proceed before the undersigned Magistrate Judge on October 10, 2006, and October 13, 2006. Pursuant to the Court's Order, the parties filed a Joint Stipulation on July 10, 2007, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

---

[1]   Michael J. Astrue became the Commissioner of Social Security on February 1, 2007.

## II.

## BACKGROUND

Plaintiff was born on October 1, 1965.  [Administrative Record ("AR") at 59.]  She completed the eighth or ninth grade and has no past work experience. [AR at 63, 66, 245.]

On June 29, 2004, plaintiff protectively filed her application for Supplemental Security Income, alleging that she has been unable to work since June 3, 2004, due to agoraphobia, severe manic depression, anxiety disorder, memory loss, and psychotic tendencies.  [AR at 59, 62-67.] After denial of her application, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 17-23, 26-30, 33.]  The hearing was held on May 3, 2006, at which time plaintiff appeared with counsel and testified on her own behalf.  [AR at 241-65.]  A vocational expert also testified.  [AR at 262-64.]  On June 7, 2006, the ALJ determined that plaintiff was not disabled. [AR at 11-16.] When the Appeals Council denied review on August 18, 2006, the ALJ's decision became the final decision of the Commissioner. [AR at 3-5.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

must defer to the decision of the Commissioner.  <u>Moncada</u>, 60 F.3d at 523; <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995); <u>Drouin</u>, 966 F.2d at 1258.

**IV.**

**<u>THE EVALUATION OF DISABILITY</u>**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); <u>Drouin</u>, 966 F.2d at 1257.

**A.     THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. § 416.920; <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995, <u>as</u> <u>amended</u> April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  <u>Id.</u>  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  <u>Id.</u>  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  <u>Id.</u>  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied.  <u>Id.</u>  The claimant has the burden of proving that she is unable to perform past relevant work.  <u>Drouin</u>, 966 F.2d at 1257.  If the claimant meets this burden, a <u>prima</u> <u>facie</u> case

3

of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. § 416.920; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of the disability.  [AR at 15.] At step two, the ALJ concluded that plaintiff's schizoaffective disorder constituted a "severe" impairment.  [<u>Id.</u>]  At step three, the ALJ determined that plaintiff's impairment did not meet or equal any impairment in the Listing.  [AR at 16.]  The ALJ further opined that plaintiff retained the residual functional capacity[2] to perform non-public, simple repetitive tasks at all exertional levels.  [<u>Id.</u>]  At step four, the ALJ concluded -- based on vocational expert testimony -- that plaintiff was capable of performing the work of a cleaner, linen room attendant, and light cleaner.  [<u>Id.</u>]  Accordingly, the ALJ determined that plaintiff was not disabled. [<u>Id.</u>]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred in: (1) considering the reports of a treating physician; (2) evaluating the disability assessment of a treating physician; and (3) evaluating the testimony of a lay witness. Joint Stipulation ("Joint Stip.") at 2-3.  As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

/

/

/

---

[2]   Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations.  <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

1  **A.     TREATING PHYSICIAN'S DISABILITY ASSESSMENT**

2          Plaintiff contends that the ALJ failed to properly consider the disability assessment of a

3  treating physician.[3]  Joint Stip. at 6-9.  Specifically, plaintiff refers to a form dated July 13, 2004,

4  from the San Bernardino County Department of Behavioral Health, which contains the assessment

5  that plaintiff cannot be gainfully employed for a one year period.  [AR at 142.]  The form states that

6  plaintiff "has been followed at this clinic for her medical condition."  [Id.]  In the decision, the ALJ

7  rejected this disability assessment because "it does not explain why [plaintiff] would be disabled

8  for one year" and is not supported by any objective testing or treatment records.  [AR at 13.]

9  Plaintiff contends that these reasons are insufficient to reject a treating physician's opinion.  As

10 discussed below, the Court agrees.

11         The ALJ adopted the residual functional capacity assessment of Dr. Louis A. Fontana, a

12 consultative examiner, and the assessment of a Disability Determination Services ("DDS")

13 physician.  [Id.]  On October 4, 2004, Dr. Fontana performed a psychiatric evaluation of plaintiff

14 and diagnosed her as follows: "rule out psychotic disorder, not otherwise specified vs.

15 schizophrenia, paranoid type, continuous"; hypertension; questionable liver problems; and

16 psychosocial stressors.  He assigned plaintiff a Global Assessment of Functioning ("GAF") score

17 of 65.[4]  [AR at 177-81.]  Dr. Fontana further opined that plaintiff is capable of performing simple

18 and repetitive tasks, as well as more detailed and complex tasks; accepting instructions from

19 supervisors; interacting appropriately with coworkers and the public; performing work activities on

20 a consistent basis, without additional supervision; maintaining regular attendance in the workplace;

21

22         [3]    Plaintiff argues that the physician who completed the form discussed in this section is Dr.
23 C. Krishna Murthy.  Joint Stip. at 6-7.  Based on a comparison of Dr. Murthy's signature with that
   on the form, it appears that plaintiff may be correct.  [Compare AR at 136, 137, with AR at 142.]

24         [4]    A Global Assessment of Functioning score is the clinician's judgment of the individual's
25 overall level of functioning.  It is rated with respect only to psychological, social, and occupational
   functioning, without regard to impairments in functioning due to physical or environmental
26 limitations.  See American Psychiatric Association, Diagnostic and Statistical Manual of Mental
   Disorders ("DSM-IV"), p. 32 (4th Ed. 2000). A GAF score from 61-70 indicates "[s]ome mild
27 symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or
   school functioning (e.g., occasional truancy, or theft within the household), but generally
28 functioning pretty well, has some meaningful interpersonal relationships." DSM-IV, p. 34.

and completing a normal workday and workweek.  [AR at 180.]  The ALJ also relied on the Mental Residual Functional Capacity Assessment of an unnamed DDS physician, who found plaintiff moderately limited in her ability to carry out detailed instructions and not significantly limited in all other categories that the physician rated.  [AR at 226-27.]

Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).  Although the treating physician's opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability.  Magallanes, 881 F.2d at 751 (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989)).  Where the treating physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830.  Where the treating physician's opinion is contradicted, the ALJ may reject it in favor of another physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.  Ramirez v. Shalala, 8 F.3d 1449, 1453-54 (9th Cir. 1993).  Specific and legitimate reasons can be set forth by a "detailed and thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's] interpretation thereof, and making findings."  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).

The ALJ rejected the disability assessment in favor of the assessments of Dr. Fontana and a DDS physician, in part, because the treating source opinion is not supported by any objective testing or treatment records.  [AR at 13.]  The ALJ is not required to accept a medical opinion that is conclusory and inadequately supported by medical findings.  Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (the ALJ need not accept a treating physician's opinion which is "conclusory and unsubstantiated by relevant medical documentation"); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) (ALJ may reject the conclusory opinion of an examining or treating physician if the opinion is unsupported by clinical findings).  Here, the form on which plaintiff relies does not cite to any documentation or other objective testing to support the findings, although it does indicate that plaintiff has been treated at the medical facility.  [AR at 142.]  Indeed, the treating

notes from the same facility in the two years prior to the July 13, 2004, assessment at issue indicate that plaintiff suffered from severe depression, paranoid thoughts, auditory hallucinations, a history of major depression with anxiety and sleeping problems, feelings of hopelessness and worthlessness, poor coping skills, and poor interpersonal skills.  [AR at 147, 156, 162, 163, 165.] Medical records also note that in April of 2003, plaintiff attempted suicide by taking 20 sleeping pills. [AR at 168.] The opinion in question, although cursory in nature, appears to have been authored by "the medical professional[] most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and [who] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. § 416.927(d)(2).  Given the plaintiff's medical records, which report a history of serious mental impairments, the Court finds that the ALJ's rejection of the July 13, 2004, opinion as lacking supporting evidence itself lacks substantiation.[5]

The ALJ also rejects the disability assessment, in part, because the treating source does not state what "medical condition" renders plaintiff unable to work for one year.  [AR at 13.]  The Social Security Administration assigns an ALJ a duty to fully and fairly develop the record to assure that a claimant's interests are considered.  See DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).  In carrying out this duty, the ALJ must "make every reasonable effort" to help the

---

[5]     While the opinion is forward looking, and indicates that plaintiff cannot be employed for one year, disability can certainly be established based on a condition that is expected to last for at least 12 months.  The relevance of this opinion, even if based on visits prior to the alleged onset date, cannot be minimized.  Accordingly, upon remand, the Court directs the ALJ to consider as well the July 24, 2003, and December 21, 2003, Medical Reports completed by Dr. Murthy.  [See AR at 136-37.]  Both reports contain diagnoses of plaintiff and indicate that she was incapacitated for temporary periods.  Specifically, the July 24, 2003, report reflects that plaintiff would be incapacitated until December 20, 2003, while the December 21, 2003, report reflects that plaintiff would be incapacitated until April 30, 2004.  The ALJ did not address either report in his opinion. The Court acknowledges that Dr. Murthy's reports from 2003 predate plaintiff's disability onset date of June 4, 2004, and cover a period of only nine months, and thus by themselves would not support a current finding of disability.  Nevertheless, due to their close proximity in time to the July 13, 2004, disability assessment, the ALJ should determine what bearing, if any, the 2003 reports have on the later assessment.

1    claimant gather his or her medical records.  20 C.F.R. § 416.912(d).  Even when the claimant is

2    represented by counsel, the ALJ must still fulfill his duty to develop the record.  See Brown v.

3    Heckler, 713 F.2d 441, 443 (9th Cir. 1983) (ALJ's duty to fully and fairly develop record exists even

4    when claimant is represented by counsel).  Ultimately, however, plaintiff bears the burden of

5    presenting evidence within her control that establishes her eligibility for benefits.  See 20 C.F.R.

6    §§ 404.704, 416.912(a).

7            The ALJ's duty to develop the record is triggered only when there is ambiguous evidence

8    or the record is inadequate to allow for proper evaluation of the evidence.  Mayes v. Massanari,

9    276 F.3d 453, 459-60 (9th Cir. 2001).   Here, the evidence was ambiguous; namely, the treating

10   source failed to indicate what medical condition rendered plaintiff disabled for one year.  As such,

11   the ALJ should have re-contacted the San Bernardino County Department of Behavioral Health

12   before simply rejecting the assessment as ambiguous.  The Court finds that the ALJ failed in his

13   duty to develop the record.  Remand is warranted.

14

15   **B.    FAILURE TO CONSIDER LAY WITNESS EVIDENCE**

16           Plaintiff contends that the ALJ erred in not discussing the evidence provided in a third-party

17   questionnaire submitted by plaintiff's mother, Angie Guayante, on April 8, 2004.  Joint Stip. at 13.

18   In the questionnaire, Ms. Guayante wrote that plaintiff "will never be able to work or care for

19   herself." [AR at 68-76.] Ms. Guayante also reported that she assists plaintiff with washing clothes,

20   cooking, shopping, transportation, and reminders to take medication.  [AR at 69, 70.]  Plaintiff

21   contends that the ALJ "did not consider" Ms. Guayante's statements in his decision.  Joint Stip.

22   at 13.

23           As stated in 20 C.F.R. §§ 404.1513(d) and 416.913(d), judges may, "in addition to evidence

24   from the acceptable medical sources . . . also use evidence from other sources to show the

25   severity of [plaintiff's] impairment(s) and how it affects [her] ability to work." 20 C.F.R. §§

26   404.1513(d), 416.913(d). Such other sources include spouses, parents and other care givers,

27   siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. §§ 404.1513(d)(4),

28   416.913(d)(4). Thus, lay witness testimony by friends and family members who have the

1   opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ

2   must consider. Sprague, 812 F.2d 1226, 1231-32 (9th Cir. 1987); see Dodrill v. Shalala, 12 F.3d

3   915, 919 (9th Cir. 1993) ("[a]n eyewitness can often tell whether someone is suffering or merely

4   malingering.... [T]his is particularly true of witnesses who view the claimant on a daily basis...").

5   An ALJ's consideration of lay testimony becomes especially important when a plaintiff alleges "that

6   pain is a significant factor of his/her alleged inability to work and the allegation is not supported

7   by objective medical evidence in the file." SSR[6] 88-13; see Smolen, 80 F.3d at 1288. To reject lay

8   testimony, an ALJ must give reasons "germane to each witness" for doing so. Dodrill, 12 F.3d at

9   919.  Failure to consider lay testimony will be considered harmless error only if "it [is] clear from

10  the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'"

11  See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v.

12  Commissioner, 454 F.3d 1050, 1055-56 (9th Cir. 2006)).

13          Here, contrary to plaintiff's contentions, the ALJ discussed Ms. Guayante's testimony and

14  gave four reasons for rejecting it.  The ALJ rejected the testimony on the grounds that it was not

15  consistent with the objective findings, the clinical evidence, plaintiff's treatment, and plaintiff's

16  activities of daily living.  [AR at 14.]  The Court notes that Ms. Guayante wrote that plaintiff was

17  previously able to care for herself, but now requires assistance with washing the clothes, cooking,

18  and shopping.  [AR at 69.]  Ms. Guayante further reported that plaintiff cannot prepare her own

19  meals.  [AR at 70.]  At the hearing, however, plaintiff testified that her chores around the house

20  include cooking, cleaning, and gardening.  [AR at 258-59.]  Plaintiff also reported to Dr. Fontana

21  that "she does a lot of housework, as well as cooking." [AR at 179.]  Given this contradiction in

22  testimony, the Court finds that the ALJ properly rejected Ms. Guayante's response to the third

23  party questionnaire on the basis that it contradicted plaintiff's reports of her daily activities.

24  Accordingly, remand is not warranted on this issue.

25

26          [6]   Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they "constitute
27  Social Security Administration interpretations of the statute it administers and of its own
    regulations," and are given deference "unless they are plainly erroneous or inconsistent with the
28  Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

**VI.**

**REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. <u>See</u> <u>Harman v. Apfel</u>, 211 F.3d 1172, 1179 (9th Cir.), <u>cert.</u> <u>denied</u>, 531 U.S. 1038 (2000); <u>Kail v. Heckler</u>, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to further develop and consider the records and disability opinions from the San Bernardino County Department of Behavioral Health.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: August _____, 2007

_____
                                        PAUL L. ABRAMS
                           UNITED STATES MAGISTRATE JUDGE